**SIGNED THIS: August 8, 2013**

_Mary P. Gorman_

_____

**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 12-71327 |
| TERRANCE M. BRENNAN, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is an Application for Compensation and Reimbursement filed by Attorney

Jason VanHemert seeking an award of fees for representing the Debtor in this Chapter 13 case. The

Application requests approval of attorney fees of $875 and paraprofessional fees of $392 for a total

of $1267.[1] Mr. VanHemert also asks that any fees awarded pursuant to the Application be awarded

_____

[1] The itemization attached to the Application, however, shows paraprofessional fees of $364
rather than the $392 claimed in the Application. Further, the itemization contains 5.7 hours of
paraprofessional time for which fees are sought, not the 5.6 hours set forth in the Application.
Included in those 5.7 hours is a one-hour entry on February 22, 2013, which requests only $35, rather
than the $70 hourly rate claimed to have been charged . It is unclear whether, in this particular entry,

–1–

on an interim basis, or alternatively, that a final fee award be made in the "no-look" amount of $3300 based upon prospective post-confirmation services and counsel's contractual agreement with the Debtor. For the reasons set forth herein, the Application will be granted in part and denied in part. Interim fees in the amount of $595 will be awarded, and the balance of attorney and paraprofessional fees requested will be denied.

## I. Factual and Procedural Background

Terrance M. Brennan ("Debtor") filed his voluntary petition under Chapter 13 on June 7, 2012. Debtor was represented in the filing by Attorney Jason VanHemert of Ostling & Associates, Ltd. Two days before filing, Attorney Lars Eric Ostling conducted a new client consultation with the Debtor. Thereafter, a staff member — Jeanna Mullins — drafted the petition and schedules. On June 7, 2012, Attorney VanHemert and Ms. Mullins conducted a petition signing appointment with the Debtor, during which the drafts of the petition and schedules were reviewed. During the pendency of the case, the Debtor was represented at the several in-court hearings by attorneys Brian Pondenis and Robert Follmer. Although Mr. VanHemert continued to file documents for the Debtor, he has never appeared in court on the Debtor's behalf.

Debtor's Schedule A — filed along with his petition — states that Debtor owned a "1/8th interest in Farm Land Trust — 72 acres of tillable — 8 acres of non-tillable." Debtor valued his interest in the farm trust at $41,600 and indicated that his interest was unencumbered. Debtor did not list any income or expenses related to the farm trust on his Schedules I and J or on his Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable

_____

the amount of time or the amount of the fee was incorrect. The presumption will be made in favor of the lower amount. With 4.7 hours charged at $70 per hour and one hour charged at $35, the aggregate paraprofessional fees sought are $364. Adding attorney fees of $875 to the $364 paraprofessional fees totals $1239.

Income - Form B22C ("B22C").

Debtor's meeting of creditors was held on August 13, 2012. Mr. Ostling attended the meeting with the Debtor. According to the Chapter 13 Trustee ("Trustee"), the Debtor testified that he had delivered documents on the farm trust to the Ostling firm earlier that morning. The Trustee's confirmation report, filed on the same date as the meeting, stated that an amended plan was expected to be filed within twenty-eight days and that the Trustee was also expecting, within the same time period, to receive copies of trust documents, profit and loss information, amended schedules, and an Amended B22C. The Trustee also noted that, although the Debtor had stated on his Schedule I that he was single and had disclosed a household size of one on his B22C, information about his spouse and her income was expected to be provided.

On September 20, 2012, Mr. Pondenis filed an Amended Plan on behalf of the Debtor. On September 26, 2012, Mr. VanHemert filed Amended Schedules A and B. A staff member logged less than a half hour for preparing all of these documents and the attorneys each logged only a few minutes to review the documents before filing. The time records do not show that either Mr. Pondenis or Mr. VanHemert met with the Debtor or obtained or reviewed any information about the farm prior to preparing and filing the amended documents.

Amended Schedule A continued to list the "Farm Land Trust" but reduced the value of Debtor's interest to $23,500. Amended Schedule B added a previously-undisclosed checking account owned by the Debtor. The Amended Plan changed the amount to be paid to the Internal Revenue Service and reduced the dividend to unsecured creditors but did not specifically address any of the issues raised by the Trustee. Accordingly, the Trustee filed an objection to the Amended Plan stating, *inter alia*, that he still had not been provided with documents for the farm trust in which the Debtor claimed an interest.

On November 20, 2012, a confirmation hearing was held on the Amended Plan. Mr. Follmer

–3–

appeared on behalf of the Debtor. According to the itemization attached to the Application, attending the hearing was the first time that Mr. Follmer touched this case, and no time was charged by Mr. Follmer to review the file, meet with the Debtor, or otherwise prepare for the hearing. At the hearing, the Trustee reported that he was still waiting for the promised documents regarding the farm. Mr. Follmer was not able to address any of the Trustee's concerns, but stated that he would ensure that all documents relating to the farm trust would be provided to the Trustee within 14 days. Mr. Follmer also requested 14 days in which to file a Second Amended Plan. Following the hearing, the Court entered an Order requiring the filing of a Second Amended Chapter 13 Plan on or before December 4, 2012.

On December 4, 2012, Mr. Pondenis filed a Second Amended Plan on behalf of the Debtor. However, the itemization does not reflect that Mr. Pondenis personally did any work with respect to the Second Amended Plan. Rather, the itemization indicates that a staff member drafted the Second Amended Plan and that Mr. VanHemert spent a couple of minutes reviewing it before it was filed. The time records indicate that, prior to the filing of the Second Amended Plan, a staff member had received from the Debtor income and expense information, farm description and ownership information, and payroll statements for the Debtor's wife. None of this new information was included in the Second Amended Plan or any other amended document. The only change in the Second Amended Plan was to add a provision for the payment of a small secured claim of Capital One, N.A. On December 27, 2012, the Trustee filed an objection to the Second Amended Plan stating, *inter alia*, that he still had not been provided with the documents on the farm trust.

On January 28, 2013, the Trustee filed an objection to Amended Schedule A wherein he stated that he had recently received documents indicating that there was no farm land trust but that, rather, the Debtor had inherited an outright one-third interest in the farmland with three others, making his interest one-fourth of one-third, or 1/12th of the farm. In addition, the Trustee had

–4–

learned that the Debtor and five co-owners had signed a contract for deed in October 2010 to purchase another portion of the farm from the estate of a deceased co-owner. The Trustee complained that Amended Schedule A was inaccurate in that the Debtor's interest in the farm was not held in trust as had been repeatedly and consistently claimed, that the Debtor's interest in the farm had a value of $46,222.22, or nearly double what was listed on the Amended Schedule A, and that a portion of the Debtor's interest in the farm was being purchased on contract and, therefore, was encumbered by debt that had not been properly disclosed and scheduled.

On January 29, 2013, a hearing was held on the Second Amended Plan. Mr. Pondenis appeared on behalf of the Debtor. According to the time records, Mr. Pondenis had not touched the file since September 20, 2012, when he had reviewed and filed the First Amended Plan. At the hearing, counsel for the Trustee acknowledged that he had received some of the documents relating to the farm which the Trustee had been waiting for since the August §341 meeting. However, Trustee's counsel stated that there was other important information which had not yet been disclosed. Specifically, the identity of the seller of the farmland which the Debtor and others were in the process of purchasing had not yet been disclosed and properly scheduled. In addition, although the contract for deed provided that contract payments would be made from income generated by the farm, the Debtor had not disclosed any income or provided any profit and loss statements related to the farm operation. The Trustee's counsel expressed concern over the fact that, at eight months into the case, this information still had not been provided. Mr. Pondenis did not offer any insight about the missing documents or information, but suggested that he be given twenty-one days to file a Third Amended Plan and straighten things out. The Court stated that, in reviewing the detailed history of the case set forth in the objection to Amended Schedule A, the posture of the case was "troubling." The Court asked Mr. Pondenis how it was that his office would represent repeatedly in filings with the Court that there was a land trust without anyone ever having actually seen any trust documents.

Mr. Pondenis did not have an answer. The Court continued the matter to February 12, 2013, by which time every financial document related to the farm and farm income issues was to be produced to the Trustee, and at which time the Debtor was to be personally present.

On February 11, 2013, Mr. VanHemert filed a Third Amended Plan on behalf of the Debtor, although the itemized time records do not show that he or anyone else in the firm met with the Debtor or obtained any of the still-missing information in the meantime. The Third Amended Plan was virtually identical to the Second Amended Plan with the only change being a slight increase in the Debtor's payments to the Trustee, adding about $9.00 over the sixty-month term of the Plan. The Trustee filed an objection to the Third Amended Plan stating, *inter alia*, that the Third Amended Plan was filed in bad faith. The Trustee also noted that the contract for deed seller — a creditor of the Debtor — had still not been scheduled or received any notice of the case. Further, the corresponding claim for this creditor was still not addressed in the Third Amended Plan.

On February 12, 2013, a confirmation hearing was scheduled to be held on the Second Amended Plan. Mr. Follmer appeared on behalf of the Debtor, and the Debtor was also present. According to the itemization, Mr. Follmer had not logged any time in this case since he appeared on the hearing on the First Amended Plan on November 20, 2012, and did not review the file or meet with the Debtor in advance of the hearing. Counsel for the Trustee acknowledged receipt of some additional information and documentation regarding the farm and the farm income. However, not all of the information needed regarding the income had yet been provided. Further, Amended Schedule A still was incorrect because it represented that the Debtor's interest in the farm was held in trust, the contract for deed seller had still not been scheduled, and provisions had not been made for payment of the seller's claim. In spite of these errors and omissions, Mr. Follmer recommended confirmation of the Second Amended Plan. When asked how a plan could be confirmed when not all of the creditors had been given notice, Mr. Follmer had no answer. He then suggested that the

recently-filed Third Amended Plan be sent out to creditors and scheduled for an objection date and hearing. The Court again asked how that could be proper in view of its failure to address the claim of the contract for deed seller. Mr. Follmer again had no answer. The Court instead ordered again that every piece of financial information requested by the Trustee and his counsel be provided under threat of dismissal of the case, and set a continued hearing for February 26, 2013.

On February 22, 2013, Mr. VanHemert filed an Amended B22C and amended schedules on behalf of the Debtor, including a Second Amended Schedule A, wherein he disclosed Debtor's interest in the farm as a 5/36th fee simple interest with a value of $46,592 and a corresponding partially secured debt of $52,000. An Amended Schedule D adding the contract seller as a creditor was also filed. On the same date, Mr. VanHemert filed a Fourth Amended Plan. Again, however, the time records show that Mr. VanHemert did not review any documents or consult with the Debtor about the Fourth Amended Plan or any of the other documents he filed. A clerical staff member logged a brief client consultation on February 22nd to obtain the Debtor's signatures on the amended schedules.

At the February 26th hearing, Mr. Pondenis appeared on behalf of the Debtor. Mr. Pondenis had not billed time in the case since he appeared at the hearing on the Second Amended Plan on January 29, 2013, and billed no time to prepare for the hearing. The Court asked Mr. Pondenis why the Amended Form B22C still showed the Debtor to be unmarried and did not include the Debtor's wife's income. Mr. Pondenis had no answer. The Court again described this discrepancy as "troubling." The Court ordered that a Fifth Amended Plan be filed within 14 days. The Court also ordered that an itemized fee application be filed if a plan ever was confirmed and stated that the Debtor's attorneys would not be entitled to the "no-look" fee routinely allowed in Chapter 13 cases.

On March 12, 2013, Mr. VanHemert filed a Fifth Amended Plan on behalf of the Debtor. The Fifth Amended Plan provided for payment to the contract seller of the farm and provided for some

of the Debtor's farm income to be paid to the Trustee for distribution to unsecured creditors. On April 15, 2013, in the absence of any objections, an order confirming the Fifth Amended Plan was entered.

On May 16, 2013, Mr. VanHemert filed the Application for Compensation. The Trustee filed an objection to the Application in which he points out the numerous problems with the case and strongly objects to Mr. VanHemert's claim for the full $3300 "no-look" fee. On June 25, 2013, Mr. VanHemert filed a response to the Trustee's objection, suggesting that because the Debtor might need to modify his plan or need other post-confirmation services, a request for the full fee was justified. Mr. VanHemert made no attempt in the Response to explain or justify the problematic way in which the case had been handled. The matter is fully briefed and ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The particular issues raised here are core proceedings. *See* 28 U.S.C. §157(b)(2)(A), (B), (O).

## III. Legal Analysis

### A. Debtor's Attorneys Are Not Entitled to Full "No-Look" Fee

Debtors' attorneys are required to file complete and accurate disclosures of their fee agreements in every case. *See* 11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(b); *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009); *In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009). Even with a client's agreement on the fee amount, attorney fees for bankruptcy debtors remain subject to court review for reasonableness. *See* 11 U.S.C. §329(b); *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998). In order for a court to make a determination of the reasonableness of any particular fee, debtors' attorneys are generally required to file itemized fee applications. *See* 11 U.S.C. §330(a);

–8–

Fed. R. Bankr. P. 2016; *Geraci*, 138 F.3d at 317.

Because many debtors' attorneys offer their services at fixed or flat rates for the entire bundle of services generally needed to complete consumer cases, many courts have adopted a practice of allowing a presumptively reasonable amount — often called a "no-look" fee — to be charged by attorneys without requiring the filing of an itemized fee application in every case. *See In re Murray*, 330 B.R. 732, 733 (Bankr. E.D. Wis. 2005). The setting of a "no-look" fee relieves attorneys and courts from the time and expense of filing and reviewing fee applications for routine matters. *Id*. And, because attorneys may still seek fees in amounts higher than the "no-look" fee simply by filing an itemized request, the practice of setting a fair "no-look" fee has generally been viewed as proper by courts and practitioners alike. *See Geraci*, 138 F.3d at 321; *In re Kindhart*, 160 F.3d 1176, 1178-79 (7th Cir. 1998).

A Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and 13 Cases (Revised 1/1/12) for the Central District of Illinois, Springfield Division is currently posted on the Court's website. The Standing Order provides that the maximum amount a debtor's attorney may charge for fees in a Chapter 13 case without having to submit itemized time records is $3300. In exchange for accepting a fixed or flat fee at or below the "no-look" amount, attorneys must agree to perform all of the services listed in the Standing Order. Attorneys may elect a different fee arrangement with their clients, but are then required to strictly comply with all statutory requirements for fee approval. In this Court's experience, the vast majority of attorneys who represent debtors in Chapter 13 cases opt for a flat fee and save themselves the time and expense of filing fee applications. Notwithstanding this general practice, the Standing Order clearly provides that, upon the request of an interested party or *sua sponte*, the Court may consider whether an attorney's agreed to fixed fee should be reduced based on the circumstances of a particular case.

Here, the poor quality of work exhibited by the Debtor's attorneys in filing multiple

–9–

unconfirmable plans caused the Court to order that an itemized application for fees be filed and that the "no-look" fee would not be awarded. Once that determination was made, it was up to Mr. VanHemert to file an application justifying his fee request, and no presumption exists that he is entitled to the full $3300 "no-look" amount. The Application filed by Mr. VanHemert shows time entries for only $875 in attorney fees and $364 in paraprofessional fees. These amounts are, therefore, the maximum that may be awarded at this time.

In the absence of a precise description of work to be done in the future and a reliable estimate of the time involved in completing that work, fees cannot be awarded for legal services not yet provided. Mr. VanHemert's general suggestion in his Response to the Trustee's objection that future services might be needed before the case concludes, falls well short of the information needed to allow an award of fees for any amount in excess of what has been itemized. The award which will be made, however, will be an interim award and, accordingly, further fee applications may be filed if, in fact, additional legal services are provided to the Debtor in this case.

### B. Debtor's Attorneys Have Not Justified Their Requested Fees

A fee application must provide sufficient information for a court to understand what services were actually provided and to determine whether the fees requested are reasonable and the services rendered were necessary and beneficial. To supply that information, an applicant must set forth a detailed statement listing each service performed, the time expended for the service performed, and the fee requested for that service. Fed. R. Bankr. P. 2016(a). Further, a narrative must also be included to explain the necessity of the services. "These *detailed* applications establish the 'actual' while an accompanying narrative explanation of the 'how' and 'why' establishes the 'necessary'." *In re Wildman*, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987). The burden is on the applicant to establish an entitlement to the fees requested and the application should contain all information necessary to

-10-

make that determination. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985).

The Application filed here by Mr. VanHemert contains the requisite itemization but virtually no explanation of the "how" or "why" of the case. No explanation is provided for the many problems in the case raised by the Court in requiring the Application and by the Trustee in objecting to it. How could Mr. Ostling and Mr. VanHemert have both met with the Debtor pre-filing and, despite knowing that he had an ownership interest in a farm, have gathered no information about how he owned his interest, whether the interest was encumbered, and whether there were income or expenses associated with the farm ownership? And why, when all of these issues were raised by the Trustee at the first meeting, did Mr. Ostling not follow up to get correct information on file? Why would Mr. VanHemert file four amended plans without ever meeting with the Debtor again and without addressing the farm issues raised repeatedly by the Trustee? And, how can Mr. Follmer and Mr. Pondenis justify their repeated court appearances on behalf of the Debtor, prior to which neither spent even a minute preparing?

In the absence of answers to these questions, this Court can only presume that no reasonable explanation exists for the way that the attorneys conducted themselves in this case. The .5 hour Mr. VanHemert spent on the first four amended plans will not be compensated. The 1.1 hours charged by Mr. Follmer and Mr. Pondenis for their wasted court appearances will not be compensated. At an hourly rate of $175, disallowing 1.6 hours results in a deduction of $280. Accordingly, only $595 in fees will be allowed rather than the $875 requested.

This Court recognizes that the fee awarded is minimal and far below what is generally charged and awarded for representing Chapter 13 debtors in this District. But, here, the quality of work was poor, and the Application justifies nothing more. This Court has previously criticized Ostling & Associates' "tag-team" approach to representing debtors where various attorneys handle

bits and pieces of a case but don't communicate with each other and end up wasting significant amounts of their own time and the time of the Court and the Trustee. *See In re Eskew*, 2012 WL 4866687, at *8 (Bankr. C.D. Ill. Oct. 12, 2012). The firm's continuing practice of handling cases in this inefficient and unprofessional manner justifies not only denying the "no look" fee but also must result in the itemized fee request receiving a "close look." *Id*. at *10. And, the "close look" results in the award of a significantly reduced fee.

### C. Compensation of Paraprofessionals Must be Denied

Reasonable and necessary services rendered by paraprofessionals are specifically included as compensable services under the Bankruptcy Code. *See* 11 U.S.C. §330(a)(1)(A); *see also In re Brooks*, 2010 WL 2044933, at *4 (Bankr. C.D. Ill. May 24, 2010); *In re Gvazdinskas*, 2010 WL 1433308, at *3 (Bankr. C.D. Ill. Apr. 8, 2010). When "the services provided by the paraprofessional represent a shift of tasks ordinarily performed by a lawyer or other professional, and the service is reasonable and necessary, the service is compensable." *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991). However, if the services performed are clerical or secretarial in nature, then the work is charged to overhead and cannot be separately charged to the client. *Id.*

To determine whether a paraprofessional's work is compensable legal work, a court must "look at the kind of services that are traditionally charged to overhead, the amount of independence allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to the paraprofessional, and the amount of supervision retained by the professional." *Id.* at 489-90. When an applicant for professional fees seeks compensation for a paraprofessional's work, the paraprofessional's experience and qualifications must be stated. *Id.* at 493. Even if the work is, in fact, clearly legal in nature, the work is not compensable under §330 unless the person rendering the services has sufficient knowledge and expertise to perform

-12-

substantive legal work. Therefore, time spent by general clerical staff advising clients, drafting documents, and the like is not compensable under §330. *Brooks*, 2010 WL 2044933, at *4; *Gvazdinskas*, 2010 WL 1433308, at *4.

The Application seeks the approval of fees for the services rendered by Douglas Hoff, Brian Tarvin, and Jeanna Mullins, all of whom are identified therein as "legal assistants." The Application seeks fees at a rate of $70 per hour for the legal assistants, and the itemization which is part of the Application claims that the legal assistants collectively expended 5.7 hours — or $364 (see footnote 1, *supra*) — of billable time in this case. The Application states that Mr. Tarvin and Mr. Hoff have bachelor's degrees and that Ms. Mullins has a high school diploma, and that each has varying amounts of work experience at the Ostling firm. None of the legal assistants have attended any paralegal education or certification program nor have they had any specialized training in bankruptcy law.

Many of the entries on the itemization which are attributable to the legal assistants are for unbilled clerical services. For example, "[d]rafting of letter...", "[c]reating PDF...", and "[c]alendaring" are all itemized clerical services for which no fee is sought. However, other listed services — for which fees are sought — are clearly clerical and, thus, noncompensable. For example, on June 5, 2012, Ms. Mullins charged 1.2 hours for "[d]raft[ing] petition and schedules..." This entry immediately followed Mr. Ostling's time entry for the new client consultation. The services performed by Ms. Mullins on that date consisted of nothing more than utilizing the information gathered by Mr. Ostling and inputting that data into a computer program which generated the petition and schedules. That is a noncompensable clerical — not a legal — task.

With respect to other services performed by the legal assistants, it is not clear that the services were legal in nature or, more critically, that any of the legal assistants were qualified to perform compensable services. The information contained in the Application simply does not support a

-13-

finding that any of the legal assistants are qualified paraprofessionals. Moreover, the nature and quality of the work product in this case attributable to the legal assistants does not suggest that any of the legal assistants has either the training or the expertise to perform compensable legal services. Rather, the record strongly suggests that the legal assistants are clerical employees who lack the experience and expertise to perform compensable services. Accordingly, all of their time expended in this case must be considered as law office overhead for which paraprofessional fees cannot be awarded.

### IV. Conclusion

Attorneys are entitled to reasonable compensation for representing debtors before this Court. *Eskew*, 2012 WL 4866687, at *10. And, to facilitate awarding reasonable fees in Chapter 13 cases, this Court has established a "no look" fee. But, that fee is only available when attorneys provide legal services in a timely and competent manner. When, as here, attorneys waste time and repeatedly file documents which do not meet the minimum requirements for the competent practice of law, the "no look" fee will not be awarded. *Id.*

Mr. VanHemert and his colleagues at Ostling & Associates could avoid some of the problems evidenced here by making their involvement in pre-filing client conferences more than perfunctory. Although this Court did not take a deduction for the time spent on pre-filing conferences, there is simply no excuse for both Mr. Ostling and Mr. VanHemert to have conducted such conferences and not collected correct information about the Debtor's marital status and household size or the requisite information about his farm interest. Further, the practice of Ostling & Associates' attorneys appearing for debtors with no preparation and no knowledge of the pending issues simply has to stop.

The Application will be allowed in the amount of $595. Because the Debtor paid a retainer of $1000, Mr. VanHemert and his firm will be ordered to disgorge the sum of $405 to the Chapter

-14-

13 Trustee.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052

of the Rules of Bankruptcy Procedure.

See written Order.

###